IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Linnell Shelton,<br><br>           Plaintiff,<br><br>   v.<br><br>Corrections Corporation of America,<br><br>           Defendant. | Civil Action No. 06-00353 (HHK)<br><br>Next Scheduled Court Event: Status Conference, July 27, 2007. |

**DEFENDANT CORRECTIONS CORPORATION OF AMERICA'S MOTION TO DISMISS FOR FAILURE TO PROSECUTE OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Comes now, Defendant, Corrections Corporation of America ("CCA") pursuant to FED. R. CIV. P. 41 and 56, requests this Court issue an Order dismissing all claims against it, with prejudice.  In support of this Motion, CCA files a Separate Statement of Uncontroverted Material Facts a Memorandum of Points and Authorities, and relies on all previously filed pleadings.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      PROCEDURAL BACKGROUND**

This lawsuit arises from Plaintiff's allegations that he did not receive proper medical treatment for a gunshot wound while incarcerated at the Correctional Treatment Facility from November 5, 2002 through January 3, 2003.  Plaintiff alleges that his wound became infected, necessitating his hospitalization at Greater Southeast Community Hospital.  Negligence is Plaintiff's sole claim against Defendants.

Plaintiff originally filed this matter on December 20, 2005, in the Superior Court for the

District of Columbia.[1]  CCA was served with the Complaint on February 8, 2006, and timely

removed to this Court.

The Court entered a Scheduling Order, specifying among other deadlines, that Plaintiff's

Expert Disclosures were to be served by March 11, 2007, that Discovery was to be completed by

May 12, 2007, and that any dispositive motions were to be filed by June 12, 2007.[2]  To date,

Plaintiff has never disclosed expert testimony he anticipates presenting at trial.[3]

A district court may dismiss an action if the plaintiff fails to prosecute his case, fails to

comply with the rules of civil procedure or fails to abide by a court order.

## II.  <u>PLAINTIFF HAS FAILED TO PROSECUTE HIS CASE</u>

LCvR 11.1 requires that a "Notice of change in address or telephone number of an

attorney or party not represented by an attorney must be filed within 10 days of the change."

Plaintiff initially filed his Complaint either while, or shortly before he was incarcerated at the

Rivers Correctional Institution in Winton, N.C.[4]  On or about, October 19, 2006, in preparation

for taking Plaintiff's deposition, Defense counsel learned that Plaintiff had been transferred to

community corrections supervision and was residing at the Hope Village Halfway House in

Washington, D.C.[5]  Defense counsel sent authorizations for the release of Plaintiff's institutional

files and medical records to Plaintiff's case manager, Mr. Wel-Don, for execution by Plaintiff, on

---

[1] Defendant Corrections Corporation of America's Separate Statement of Uncontroverted Material Facts in Support of Its Motion to Dismiss for Failure to Prosecute or, in the Alternative, for Summary Judgment (hereinafter "SOF"), filed herewith ¶1.

[2] SOF ¶9.

[3] SOF ¶ 18.

[4] SOF ¶ 4.

[5] SOF ¶ 11.

October 23, 2006.[6]  Plaintiff did not return the releases and was not deposed prior to his release from custody on November 29, 2006.[7]  As Plaintiff has failed to advise Defense Counsel or the Court of his current residence, Defendants have been unable to serve Plaintiff with discovery requests or a Notice of Deposition.[8]

Plaintiff's failure to follow local rules and advise both the Court and Defendant of his current address is not "unavoidable" or "excusable" but is "evidence of [his] general disregard for this litigation."[9]  A District Court possesses undisputed authority to control its docket and to dismiss those cases plaintiffs fail to prosecute.[10]  In view of the history of the litigation, if the litigant has failed to exercise reasonable diligence in pursuing his case, such a dismissal is proper.[11]  As here, where a litigant has engaged in a "course of protracted neglect," by making himself unavailable to Defendant for discovery, failing to conduct discovery, and failing to disclose required expert testimony, dismissal is clearly an appropriate sanction.[12]  In a case where Plaintiff's neglect of his own case is coupled with a disregard of established rules, such as L.Cv.R. 11.1, "[d]ismissal for failure to prosecute is particularly appropriate."[13]

Because of Plaintiff's willful and dilatory conduct, the public's interest in expeditious resolution of this case is not served.  As this Court noted, "one irresponsible party's repeated delays can cause a ripple effect of delay and postponement in the Court's entire calendar.  Thus,

---

[6] SOF ¶¶ 12 and 14.

[7] SOF ¶ 16.  *See* also, SOF ¶¶ 14-15.

[8] SOF ¶ 17.

[9] *Ames v. Standard Oil Co. (Indiana)*, 108 F.R.D. 299, 300 n.2.

[10] *Link v. Wabash Railroad Co.*, 370 U.S. 626, 629 (1962).

[11] *Cherry v. Brown-Frazier-Whitney*, 548 F.2d 965, 969 (D.C. Cir. 1976).

[12] *Jackson v. Washington Monthly Co.*, 569 F.2d 119, 121 (D.C. Cir. 1977).

[13] *Ames,* 108 F.R.D. at 302 (citing *Shaeffer v. Warehouse Employees Union Local No. 730*, 408 F.2d 204, 204 (D.C. Cir. 1969).

if the district courts are to avoid exacerbating the already heavy backlog of litigation, the power and willingness to draw the line on dilatory litigants 'must be more than theoretical.'"[14]

While it is not necessary for Defendant to prove that they are prejudiced by Plaintiff's neglect and failure to comply with established court rules, "the prejudice to the opposing party – in terms of time and expense – may be considered."[15]  Plaintiff's unjustified refusal to advise the Court and Defendant of his current address prejudices Defendant.  Unless Plaintiff advises Defendant of his address, Defendant cannot serve discovery or a notice of deposition upon Plaintiff.  Plaintiff's own neglect and failure to comply with the Local Rules interferes with the public policy favoring disposition of cases on their merits.  Plaintiff cannot file a lawsuit and then choose not to follow the rules that govern the process.  Accordingly, dismissal of Plaintiff's Complaint for failure to prosecute is appropriate.

## III.   DEFENDANT CCA IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW

### A.     Plaintiff's Claim Is a Medical Malpractice/Negligence Claim.

Plaintiff alleges that upon his incarceration at the D.C. Correctional Treatment Facility ("CTF"), he was no longer permitted to possess materials to care for his healing gunshot wound himself.  Plaintiff was required by Defendant to have his dressings changed and inspected by the contract medical staff of Defendant.[16]  Plaintiff's claim is not that Defendant was negligent in failing to provide medical care; rather, Plaintiff alleges that the contracted medical providers employed by Defendant CCA were negligent in the care they provided.  Thus, Plaintiff's allegation is one of medical malpractice.

---

[14] *Ames*, 108 F.R.D. at 302 (citing *Automated Datatron, Inc. v. Woodcock*, 659 F.2d 1168, 1170 (D.C. Cir. 1981)).

[15] *Ames*, 108 F.R.D. at 302.

[16] SOF ¶1.

In *Estelle v. Gamble*,[17] the Supreme Court ruled that an inmate complaining about medical care either has a constitutional claim or a medical malpractice claim. Plaintiff has not raised a constitutional claim, and his complaints about the quality of medical care, necessarily must be decided using the standards of a medical malpractice case.

The facts in this case are analogous to the leading case in the District of Columbia relating to provision of medical care to inmates of the D.C. Department of Corrections. In *District of Columbia v. Mitchell*,[18] the trial court first granted defendant's motion for directed verdict on the medical malpractice claim because plaintiff did not establish malpractice or injury resulting from a deviation of an established standard of care. The trial court, however, permitted plaintiff to amend the pleadings to allege ordinary negligence, on the assumption that "the injury was of such a nature that it was readily apparent to any layperson that medical attention was required."[19] Upon motion of defendants for Judgment Not Withstanding Verdict, the trial court recognized that the count "necessarily was a medical malpractice claim, and should not have gone to the jury with an instruction that did not recognize the need for an expert to establish the standard of care."[20] The District of Columbia Court of Appeals reversed the trial court's decision. The case acknowledges the need of a plaintiff to present expert medical evidence concerning the standard of care in a medical malpractice case.[21]

### B.    Expert Testimony Is Necessary For Plaintiff To Prevail In His Medical Malpractice/Negligence Claim.

It is well established that in a medical malpractice case, the plaintiff must establish the

---

[17] 429 U.S. 97, 105-106 (1976)

[18] 533 A.2d 629, 647 (D.C. 1987)

[19] *Id.*

[20] *Id.*

[21] *Id. at 648. See* also *District of Columbia v. Wilson,* 721 A.2d 591, 597 (D.C. 1998)

following three elements: (1) the applicable standard of care; (2) a violation of that standard of care by the defendant; and, (3) a causal nexus between the violation and the plaintiff's injury.[22] Moreover, "the use of expert testimony is required since the subject is 'not likely to be within the common knowledge of the average layman.'"[23]

Medical providers are not expected to be perfect. Thus, it "is essential to a prima facie case of negligence" to establish a standard of care, since medical providers are liable "only when their behavior falls below that which would be undertaken by a reasonably prudent" provider.[24] As the District of Columbia Court of Appeals declared in *Strickland v. Pinder,* "[a]t the outset of a medical malpractice case, the plaintiff must establish through expert testimony the course of action that a reasonably prudent doctor with the defendant's specialty would have taken under the same or similar circumstances."[25]

In the instant case, Plaintiff alleges that he received substandard care for an "open and draining" chest wound related to a gunshot injury. In cases of a similar nature involving both infection and post-operative wound care, the District of Columbia Court of Appeals has held that expert testimony is necessary.[26] Expert testimony must be presented to "avoid a jury finding

---

[22] *Riddick v. Washington Hospital Center,* 183 F.R.D. 327, 329 (D.D.C. 1998); *Pannu v. Jacobsen,* 909 A.2d 178, 192 (D.C. 2006); *District of Columbia v. Wilson,* 721 A.2d at 597; *Travers v. District of Columbia,* 672 A.2d 566, 568 (D.C. 1996).

[23] *Allen v. Hill,* 626 A.2d 875, 877 (D.C. 1993) (quoting *District of Columbia v. Barriteau*, 399 A.2d 563, 569 (D.C. 1979)).

[24] *Pannu,* 909 A.2d at 192.

[25] 899 A.2d 770, 773 (D.C. 2006) (citations and quotations omitted). *See also*, *District of Columbia v. Wilson,* 721 A.2d at 597; *Travers,* 672 A.2d at 568.

[26] *Meek v. Sheppard,* 484 A.2d 579, 581 (D.C. 1984) (In case relating to improper treatment of infection, "if the plaintiff fails to establish the standard of care in a medical malpractice case, the trial court must direct a verdict for the defendant."); *Travers,* 672 A.2d 566 (D.C. 1996) (Summary Judgment appropriate in case related to negligence in failing to administer aspirin following surgery where plaintiff's medical experts did not establish standard of care or proximate cause); *District of Columbia v. Mitchell,* 533 A.2d at 649 ( In case involving

based on mere conjecture or speculation."[27]

Additionally, it is necessary for plaintiff to proffer expert testimony both that the defendant failed to comport with the accepted standard of care and that that failure was the proximate cause of plaintiff's injuries.[28]  Here, Plaintiff alleges Defendant's contracted medical providers "began providing non-sterile dressing, began changing the dressing in a careless and negligent manner, having its staff fail to use sterile dressing, failing to keep proper hygienic steps by the staff before changing his dressing, failing to properly diagnose that an infection was developing, failing to properly treat the infection once it started, failing to provide a proper facility to care for and treat the plaintiff's condition, and otherwise providing improper, inadequate and substandard medical care, treatment and attention."[29]  All of Plaintiff's allegations require expert testimony concerning a standard of medical care.  The facts raised by Plaintiff and whether those facts comport with the standard of care are areas where a layperson is unlikely to possess knowledge.  Plaintiff is not entitled to a recovery solely because his wound became infected.  Since medical providers do not, and cannot guarantee results, the mistakes that a particular medical provider may make are not actionable unless the provider's performance fell

---

complaints about medical services received after an operation, where plaintiff developed an infection at the incision site, "[t]he standard for post-operative treatment is not readily discernible by a layperson.")

[27] *Travers,* 672 A.2d at 568 (citation omitted).

[28] *Rickman,* 183 F.R.D. at 329 ("where such a case involves the exercise of professional skill or judgment, a jury usually will not be qualified without the assistance of an expert to determine whether there was negligent treatment and whether it caused the injury."), *Nichols ex rel. Hamilton v. Greater Southeast Community Hosp.,* 382 F.Supp.2d 109, 114 (D.D.C. 2005) ("For cases alleging negligence in the provision of medical care and treatment (*i.e.,* medical malpractice claims), a determination whether a defendant breached the applicable standard of care, and whether that breach cause the plaintiff's injury, is generally outside the purview of a layman.")

[29] Compl. ¶ 11.

below the applicable standard of care.[30]   In this case, Plaintiff needs an expert witness to opine

that the medical care provided by Defendant's contracted medical providers did, in fact, fall

below the accepted standard of care.  The failure to provide such evidence is fatal to his claim.

       Finally, Plaintiff must produce expert testimony that Defendant's alleged failure to

comport with the accepted standard of care was the proximate cause of Plaintiff's injuries.

Plaintiff alleges that he suffered "a worsening of his infection, physical pain, mental anguish,

embarrassment, shame, humiliation, the necessity for further hospitalization, medical expenses,

loss of earning capacity, and an inability to enjoy his normal and usual activities."[31]   Moreover,

Plaintiff alleges that "[a]ll of his injuries and damages … are of a permanent nature."[32]   No

layperson can be expected to have the capacity, without expert testimony, to assess the likelihood

that Plaintiff's condition and damages are permanent.  Both this Court and the District of

Columbia Court of Appeals held that expert testimony is necessary to prove that a plaintiff's

injuries were proximately caused by defendant's negligence.[33]   Once again, the lack of expert

testimony is fatal to his claim.

       In order for Plaintiff to prevail at trial, he must present expert testimony as to the

accepted standard of care owed to him by Defendant CCA, that the actions of Defendant CCA's

---

[30] *Meek*, 484 A.2d at 579

[31] Compl. ¶ 14.

[32] *Id.*

[33] *Stewart v. Bepko,* 576 F.Supp. 182, 183 (D.D.C. 1983) ("With respect specifically to the element of causation, it is the plaintiffs' burden to produce a medical expert who can testify that, in his opinion, and to a reasonable degree of medical certainty, the alleged negligence caused the injury."); *Gregory v. Greater Southeast Community Hosp.,* 697 A.2d 1221, 1222 (D.C. 1997) ("Ordinarily, in a medical malpractice case, expert testimony is required to prove … causation") (citations omitted); *Sponaugle v. Pre-Term, Inc.,* 411 A.2d 366, 368 (D.C. 1980) ("assur[ing] that reliable opinions are given … is particularly important where the causation element is unclear ….  In a medical malpractice case, where legal and factual causation are major issues, there may well be a sound basis for the requirement that expert medical testimony be given in terms of 'reasonable medical certainty.'")

contracted medical providers did not comport with the accepted standard of care, and that Defendant CCA's failure to comport with the standard of care was the proximate cause of his injuries. Plaintiff cannot do so and, therefore, his claims should be dismissed.

### C.    Plaintiff Failed To Designate Any Expert Testimony.

In its Scheduling Order, the Court ruled that Plaintiff's expert disclosures under FED. R. CIV. P. 26(a)(2) should be served by March 11, 2007.[34] To date, Plaintiff has not disclosed any expert testimony.[35] Plaintiff cannot prove a *prima facie* case of medical malpractice/negligence without expert testimony.

In *Allen v. Hill*,[36] the District of Columbia Court of Appeals considered summary judgment granted to defendant where plaintiff failed to produce an expert witness, and held that "by failing to produce expert testimony, [plaintiff] failed to bear the 'burden of proving negligence by a preponderance of the evidence.'"[37] As such, Plaintiff's failure to comply with this Court's Scheduling Order and timely disclosing an expert pursuant to FED. R. CIV. P. 26(a)(2) is a bar to Plaintiff setting forth specific facts demonstrating a genuine issue for trial.

### D.    Defendant Did Not provide Medical Care to Plaintiff

At all times Plaintiff was incarcerated at the CTF facility, CCA contracted its medical services with The Center for Correctional Health and Policy Studies, Inc. ("CCHPS").[38] Medical care was provided by CCHPS and any claim that malpractice occurred can only be brought against the entity providing such care. Since CCA did not provide medical care to Plaintiff a claim of medical malpractice cannot be sustained.

---

[34] SOF ¶ 9

[35] SOF ¶ 18

[36] 626 A.2d 875, 877-78 (D.C. 1993)

[37] *Id.* (citation omitted).

[38] SOF ¶ 20

IV.    **CONCLUSION**

Because Plaintiff has filed to prosecute this action and his failure to provide expert evidence of medical malpractice, there is no issue of fact to be decided by the jury and judgment should be entered for Defendant.

Dated: June 12, 2007                    Respectfully submitted,

By:  s/Timothy J. Bojanowski
                    Daniel P. Struck, Bar No. 012377
                    Timothy J. Bojanowski, Bar No. OH0014
                    JONES, SKELTON & HOCHULI, P.L.C.
                    2901 North Central Avenue, Suite 800
                    Phoenix, Arizona  85012
                    Telephone:  (602) 263-1700
                    Facsimile:  (602) 263-1784

                    Paul J. Maloney, Bar No. 362533
                    Mariana D. Bravo, Bar No. 473809
                    Colleen E. Durbin, Bar No. 500039
                    CARR MALONEY, P.C.
                    1615 L. Street, N.W., Suite 500
                    Washington, D.C. 20036
                    Telephone:  (202) 310-5592
                    Facsimile:  (202) 310-5555

                    *Attorneys for Defendant Corrections Corporation of America*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this ___12th___ day of June 2007, I caused a true and correct copy of the foregoing Defendant Corrections Corporation of America's Motion to Dismiss for Failure to Prosecute or, in the Alternative, for Summary Judgment to be served via

- 10 -

pre-paid first class U.S. mail upon Plaintiff *pro se* at his last known address, as filed with the

Clerk of the Court at:

>Linnell Shelton, a/k/a Keith Toney
>Registration No. 01230-707
>**CI RIVERS CORRECTIONAL INSTITUTION**
>P. O. Box 630
>Winton, North Carolina 27986

as well as at the following address where Defendants believe Plaintiff may currently reside:

>Linnel Shelton, a/k/a Keith Toney (Reg. No. 01230-707)
>**FCI BECKLEY**
>Federal Correctional Institution
>P.O. Box 350
>Beaver, West Virginia 25813

s/Dianne Clark